UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHARLES K. WILSON,

                      Petitioner,

    v.

HAROLD GRAHAM, Superintendent,

                      Respondent.

**18-CV-192 (HBS)**

**Report & Recommendation**

---

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C). Dkt. No. 18. Self-represented petitioner Charles K. Wilson has filed an application to this Court for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging his state court convictions on several grounds. *See* Dkt. No. 1. Respondent duly filed the State Court Record (Dkt. Nos. 17-2 & 17-3, hereinafter "SCR") and his responding Memorandum. Dkt. No. 16. Wilson has filed his reply. Dkt. No. 29. The matter is therefore fully briefed.

For the reasons that follow, the Court recommends that the petition be DENIED.

## BACKGROUND

In October 2006, Wilson was charged in a multi-count indictment for offenses arising from a home invasion in September 2006. At trial, the State alleged that Wilson and his co-defendant, Kenneth T. Boykins, had broken into the residence of Ramon Releford while no one was home. Dkt. No. 17-5 at 700. When Releford and his family returned, Wilson and Boykins confronted them with guns and ordered Releford to empty his pockets. Releford threw money and other items on the floor, at which point Wilson and Boykin shot him. They fled from the house, but one of the defendants returned moments later and shot Releford again. Nevertheless, Releford survived, and

Wilson was later identified as one of the assailants. Wilson's theory at trial was that this was a case of mistaken identity and that he was not in fact involved. *Id.* at 673.

Ultimately, the jury found Wilson guilty of two counts of first degree robbery, two counts of first degree assault, one count of second degree assault, three counts of first degree burglary, and one count of attempted murder in the second degree. *Id.* at 780.

Wilson filed an appeal to the Appellate Division, Fourth Department. As is relevant to the habeas petition, the Appellate Division rejected Wilson's arguments and affirmed the convictions. *See People v. Wilson*, 120 A.D.3d 1531 (N.Y. App. Div. 2014).

Wilson sought leave to appeal to the Court of Appeals, which granted his application. SCR at 263. Nevertheless, the Court of Appeals also rejected Wilson's arguments and affirmed the order of the Appellate Division. *People v. Wilson*, 64 N.E.3d 286 (N.Y. 2016).

Thereafter, Wilson filed the present petition. He raises five grounds for relief: (1) the trial court erroneously held that certain statements he made after invoking his *Miranda* rights were admissible as impeachment evidence; (2) the identification procedures the police employed during their investigation were unduly suggestive; (3) the trial court erred when it declined to sever Wilson's trial from that of his co-defendant; (4) trial counsel was ineffective by failing to request a "missing witness" charge; and (5) the evidence admitted at trial was insufficient to support his convictions. *See generally* Dkt. No. 1.

## DISCUSSION

Wilson's claims may be divided into two categories: those that he exhausted and those that he failed to exhaust. The Court first addresses the latter category, before turning to the merits of the fully exhausted claims.

### I. Unexhausted Claims

Respondent argues that Wilson failed to exhaust his claims for severance, ineffective assistance of counsel, and insufficiency of the evidence. The Court agrees.

"Generally, a federal court cannot review a habeas petition unless the petitioner 'has exhausted the remedies available to him in the state courts.'" *Cox v. Eckert*, 351 F. Supp. 3d 373, 375 (W.D.N.Y. 2019) (quoting 28 U.S.C. § 2254(b)(1)(A)). "To satisfy this requirement, the petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered." *Id.*

Importantly, "[i]f the petitioner failed to raise a claim on direct review, and can no longer do so, the claim is deemed to be exhausted, but is procedurally defaulted." *Id.* "Although defaulted claims are generally deemed to be exhausted, exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted on those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Id.* (internal quotation marks and brackets omitted).

In this case, Wilson failed to exhaust the three above claims because he did not fairly present them to the New York Court of Appeals on direct review. As to his insufficiency-of-the-evidence claim, Wilson did not raise that claim either in his application for leave to appeal or in his brief to the

3

Court of Appeals. *See* SCR at 219-23, 264-315. As to the other two claims, Wilson raised those arguments in his application for leave, but he then failed to brief them, and the Court of Appeals did not address them in its decision. *See* SR 219-23, 264-315, 338-45. Courts in this Circuit have held that a claim is not "fairly presented" to the Court of Appeals where it is raised in the application for leave to appeal but omitted from the subsequent brief. *See Person v. Ercole*, No. 08-CV-7532, 2015 WL 4393070, at *15 (S.D.N.Y. July 16, 2015) ("[A] petitioner may still be found to have abandoned (and therefore not exhausted) claims that, while fairly raised in his initial leave application, are not then mentioned in his subsequently [filed] briefs."); *Kelly v. Griffin*, No. 12-CV-3384, 2013 WL 1833240, at *1 (E.D.N.Y. May 1, 2013) (same); *see also Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) ("For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect.").

Wilson responds that he could not have raised these issues before the Court of Appeals because they involved mixed questions of law and fact, *see* Dkt. No. 29 at 6-7, 11, 14, and "mixed questions of law and fact[] are generally beyond the jurisdiction" of the Court of Appeals. *People v. Bigelow*, 488 N.E.2d 451, 453 (N.Y. 1985). The Court is not persuaded. Whether a trial court abuses its discretion in denying a severance motion is a legal question routinely addressed by the Court of Appeals, *see, e.g.*, *People v. Ford*, 903 N.E.2d 256, 258-59 (N.Y. 2008) (reviewing argument that "trial court erroneously denied [the defendant's] severance motion"); *see also People v. Jones*, 26 N.E.3d 754, 757 (N.Y. 2014) ("[W]hether there has been an abuse of discretion is a question of law, not of fact."), as is a sufficiency-of-the-evidence challenge, *see People v. XuHui Li*, 140 N.E.3d 965, 969-73 (N.Y.

2019) (reviewing challenge to the sufficiency of the evidence); *People v. Tyndall*, 179 A.D.3d 846, 847 (N.Y. App. Div. 2020) ("Legal sufficiency of the evidence supporting a conviction presents a pure question of law."). As for Wilson's claim of ineffective assistance of counsel, such a claim must be brought on direct appeal where, as here, the facts supporting the claim are "contained within the trial record."[1] *Cruz v. Berbary*, 456 F. Supp. 2d 410, 414 (W.D.N.Y. 2006); *see also Rios v. Miller*, No. 17-CV-2256, 2020 WL 4003607, at *2 (S.D.N.Y. July 15, 2020) ("To properly exhaust a claim that relies on [trial counsel's] errors or omissions that are apparent from the record of trial or pretrial proceedings, petitioner must raise such claim on direct appeal to the Appellate Division and then seek leave to appeal to the Court of Appeals.").

Consequently, Wilson did not exhaust his available state remedies for these claims. Furthermore, because the proceedings on Wilson's direct appeal "are completed and there is no procedure under state law for [him] to reassert" these claims, the claims are procedurally defaulted. *Kelly*, 2012 WL 6569769, at *3. Claims that are procedurally defaulted are "not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent." *Torres v. O'Meara*, 353 F. Supp. 3d 180, 190 (N.D.N.Y. 2019). "To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule." *Id.* at 191. Because Wilson does not develop any argument concerning

---

[1] To the extent Wilson believes that the facts supporting his ineffective-assistance claim are outside of the trial record, and thus could not have been brought on direct appeal, his recourse was to file a motion under N.Y. Criminal Procedure Law § 440.10. *See Cruz*, 456 F. Supp. 2d at 414.

cause or actual innocence, Wilson cannot circumvent the procedural default, and habeas relief is precluded on these claims.

## II. Exhausted Claims

The Court now examines Wilson's two exhausted claims.

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), Section 2254(d) of Title 28 permits a federal court to grant a habeas corpus petition with respect to a state conviction in only two situations. The state court's adjudication of the claim must have

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). As to subsection (1), in order to overturn a state court's decision on the ground that it conflicts with "clearly established Federal law," the petitioner may pursue one of two paths. "First, a petitioner may show that a state court's decision was 'contrary to' federal law, by demonstrating either (1) that the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court, or (2) that, when presented with facts that are materially indistinguishable from a relevant Supreme Court precedent, the state court arrived at a result opposite to the one reached by the Supreme Court." *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013).

"Alternatively, a petitioner may prevail by showing that a state court's decision involved an 'unreasonable application' of federal law." *Id.* at 132-33. "A state court decision involves an 'unreasonable application' of federal law 'if the state court identifies the correct governing legal

6

principle . . . but unreasonably applies that principle to the facts' of the case before it." *Id.* at 133. This involves "[s]ome increment of incorrectness beyond error." *Id.*

As to subsection (2), "a federal habeas court may grant relief where the state court's determination 'was based on *an unreasonable determination of the facts* in light of the evidence presented in the [s]tate court proceeding.'" *Evans v. Griffin*, No. 16-CV-5438, 2019 WL 3997439, at *11 (E.D.N.Y. Aug. 23, 2019) (quoting 28 U.S.C. § 2254(d)(2)). The question is whether the evidence "can fairly be read to support the trial court's factual determinations," and a state court's factual determination "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (internal brackets omitted). "Where reasonable minds reviewing the record might disagree as to the relevant finding, that is not sufficient to supplant the state court's factual determination." *Id.* (internal quotation marks and brackets omitted).

The Court's review of each of Wilson's claims focuses on the "last reasoned decision" of the state courts. *Baker v. Lempke*, No. 07-CV-1179, 2010 WL 1730034, at *3 (N.D.N.Y. Apr. 26, 2010).

### a. *Miranda* Violation

Before trial, Wilson challenged the admission of certain statements he made after he invoked his *Miranda* rights during a post-custody interview with police. SCR at 111-13. The trial court summarized the incident as follows:

> On October 26, 2006, at approximately 10:38 p.m., the defendant Wilson was taken into custody. . . . [He] was then taken to Public Safety Building to be interviewed. He was advised of his Miranda warnings. In Investigator Hill's opinion he was not under the influence of any drugs or alcohol. He was then asked if he had been drinking or using drugs and the defendant Wilson indicated "no" to both questions. Defendant Wilson indicated that he understood his rights and said he did not wish to talk to the officers. The interview was terminated and Investigator Hill told defendant Wilson that he was being charged with a shooting at Shelter Street. He was also told that [the co-

7

defendant] was likewise being charged. Defendant Wilson "looked puzzled". Investigator Hill then told him "you must know him (meaning [the co-defendant]), because that is the person who shot himself". Wilson, both verbally and by nodding his head in the negative, denied knowing Boykins. Investigator Tucker told Wilson that Boykins was "the one" who shot himself. According to Tucker, Wilson became upset at that, stating in sum and substance "he didn't shoot himself – no one would hurt themselves like that". Again, when asked if he knew Boykins, Wilson stated he knew who he was.

SCR at 69-70. The government had previously agreed not to use those statements in its case in chief, but indicated that it intended to use the statements "to impeach [Wilson] . . . should he testify at trial." *Id.* at 73. Wilson asserted that the statements should not be admissible for any purpose. *Id.*

The trial court concluded that the government could use the statements as impeachment evidence, citing *Harris v. New York*, 401 U.S. 222 (1971). Under *Harris*, the mere violation of *Miranda* does not preclude the use of a defendant's statements as impeachment evidence, so long as "the trustworthiness of the evidence satisfies legal standards." *Harris*, 401 U.S. at 224; *see also id.* at 226 ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."). To that end, the trial court found that Wilson's statements were "voluntarily made," since the "statements were not the fruit of any threats, promises or physical abuse by the police," Wilson was "not under the influence of drugs or alcohol," and the exchange was brief and not the product of prolonged interrogation. SCR at 74.

At the Court of Appeals, Wilson argued that the court should adopt a bright-line rule precluding the use of "*any* statements for *any* purpose" when the statements are "extracted from the defendant subsequent to his invoking his *Miranda* rights." SCR at 291. Wilson also asserted that the trial court's ruling on voluntariness was erroneous, as it ignored the fact that "[b]y continuing to

8

question [] Wilson after he indicated he did not wish to speak, the police relayed to him the message that the rights he just invoked were merely illusory." *Id.* at 303. Wilson cited *People v. Nelson*, 189 Misc. 2d 362 (Monroe Cty. Ct. 2001) in support. *Id.* at 297. In *Nelson*, a police investigator continued to question a defendant after he had invoked his *Miranda* rights. *Nelson*, 189 Misc.2d at 363. He did so because he knew the *Harris* rule and "sought to obtain statements that could be used against the defendant should the defendant testify at trial." *Id.* at 364. Because the "conscious objective of the police . . . was to elicit statements from [the defendant] in clear violation of his rights to counsel and silence," the court found that the statements were inadmissible even as rebuttal evidence. *Id.* at 365.

The Court of Appeals rejected Wilson's arguments. It declined to abrogate the *Harris* rule or adopt Wilson's bright-line standard. *Wilson*, 64 N.E.3d at 289. The court also concluded that "there [was] nothing in the record" to support Wilson's claim that Investigator Hill "consciously circumvented" his *Miranda* rights or engaged in any other conduct that "rendered [Wilson's] statements involuntary." *Id.*

In his habeas petition, Wilson asserts that the Court of Appeals wrongly concluded that his statements were voluntarily made. He highlights the facts that the environment was "intimidating and manipulative," that he was without counsel, and that he was "upset and emotional" because police "continued to question him despite the fact that [he] did not wish to speak." Dkt. No. 1 at 18; Dkt. No. 29 at 18.

To the extent Wilson is challenging the factual determinations concerning what occurred during the custodial interrogation, the Court can discern no "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Court

9

has reviewed the transcripts, Dkt. No. 17-4 at 72-165, and there is a reasonable basis in the record for the trial court's findings quoted above and for its conclusion that Wilson's statements "were not the fruit of any threats, promises," physical abuse, or prolonged interrogation. SCR at 74. Moreover, there was a sufficient basis in the record to conclude that Investigator Hill's intent was unlike the officer's in *Nelson*: while Investigator Hill acknowledged he was aware of the *Harris* rule, he did not state that he purposefully intended to circumvent Wilson's invocation of his *Miranda* rights. *See* Dkt. No. 17-4 at 158-59.

Based on those factual determinations, the trial court and, on appeal, the Court of Appeals reasonably concluded that the statements were voluntary. In assessing voluntariness, a court must look to the totality of the circumstances, including "1) the accused's characteristics, 2) the conditions of the interrogation, and 3) the conduct of the police." *Parsad v. Greiner*, 337 F.3d 175, 183 (2d Cir. 2003). Here, Wilson was not under the influence of any drugs or alcohol, and police asked Wilson a few questions as they were terminating an otherwise brief interview. These circumstances do not have a coercive character. *See United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991) ("A confession is not voluntary when obtained under circumstances that *overbear the defendant's will* at the time it is given." (emphasis added)). The other facts Wilson cites—that officers questioned him after he invoked his *Miranda* rights, that he became "upset and emotional" during the interview, and that he did not have counsel—do not compel a different conclusion. *See Parsad*, 337 F.3d at 184 ("The mere fact that police officers improperly question a suspect after he invokes his right to remain silent during a custodial interrogation does not render his subsequent statements the product of coercion."); *Green v. Scully*, 850 F.2d 894, 902 (2d Cir. 1988) (stating that "presence or absence of

10

counsel" during interrogation is a "significant" but not dispositive factor); *cf. United States v. Beckett*, No. 04-CR-158, 2004 WL 2849171, at *3 (S.D.N.Y. Dec. 13, 2004) (defendant's personal characteristics not dispositive in determining whether statement is voluntary).

Finally, to the extent Wilson argues that the Court of Appeals should have adopted his preferred bright-line rule, such a claim does not merit habeas relief, as the Court of Appeals' conclusion is consistent with federal law. *See Harris*, 401 U.S. at 225-26.

Accordingly, this claim does not entitle Wilson to relief.

### b. Identification Procedures

During pretrial proceedings, Wilson also challenged the photo-array and line-up procedures that police used during their investigation. SCR at 117-18. Again, the Court refers to the trial court's summary of the events:

> On September 16, 2006, Investigator Hill went to Strong Memorial Hospital to talk to Deasiah Jones, who was a witness to the home invasion/robbery that had occurred on Shelter Street. The purpose of the meeting was to show her a photo array containing a photo of [Wilson]. Investigator Hill showed the photo array to Ms. Jones in the "quiet room" at the hospital. Prior to showing her the array, Investigator Hill told her that he was going to show her some photographs and she should tell him if she recognized anyone. At no time did Investigator Hill make any motions or gestures to entice Jones to select any particular photo. After looking at the photo array approximately ten to fifteen seconds she pointed at [photo] #5 and said "that kind of looks like him". Investigator Hill asked her to quantify how sure she was by picking a number between one and one hundred and Ms. Jones choose [sic] number seventy five. Number 5 is a photograph of defendant, Charles Wilson.
>
> Investigator Hill met with Ms. Jones again on September 21. This time he prepared a different photo array . . . using a different photograph of defendant Wilson. . . . Defendant Wilson's photo was also placed in a different position, this time in profile #2. Investigator Hill gave Ms. Jones the same instructions as before and handed Ms. Jones the array. Ms. Jones looked at the array approximately five to ten seconds and said "#2, that looks just like him". When asked to quantify between one and one hundred how sure she was she said "between seventy five and eighty five". Ms. Jones

> also stated that she had seen this individual the previous day before the incident and that she could pick him out in person. . . .
>
> On October 26, 2006 at approximately 10:38 p.m., the defendant Wilson was taken into custody. At approximately 1:20 a.m. Wilson was placed in a physical line-up at the Monroe County Jail waiting area. . . . The witness viewing the line-up was Desiah Jones. Ms. Jones was with Investigators Tucker and Hill in an adjacent room looking through a two way glass with the blinds blocking her view prior to the actual line-up taking place. Ms. Jones was given instructions about the line-up verbatim off a form[]. The blinds were then opened and each person was asked to step forward and turn 90º each way then step back. All six individuals in the line-up did so and Ms. Jones was asked if she recognized anyone. She stated "yes". She was then asked the four questions on [the form], and her answers were duly recorded on that form.

*Id.* at 69-70. The trial court concluded that neither the photo arrays nor the line-up procedure were unduly suggestive, and so it declined to exclude the evidence at trial. *Id.* at 73.

On appeal to the Appellate Division, Wilson argued that the photo arrays were unduly suggestive because they were conducted within a five-day span and because his successive photographs had "striking similarities" that caused him to be "singled out for identification." *Id.* at 33-35. Wilson contended that these errors in the photo arrays tainted the subsequent line-up procedure. *Id.* at 36.

The Appellate Division affirmed the ruling of the trial court. *Wilson*, 120 A.D.3d at 1532. It stated:

> [The trial court] did not err in refusing to suppress identification evidence. Multiple photo identification procedures are not inherently suggestive. While the inclusion of a single suspect's photograph in successive arrays is not a practice to be encouraged, it does not per se invalidate the identification procedures. Here, although there was not a significant lapse of time between the presentation of the arrays, the record establishes that different photographs of defendant were used, that the photographs of defendant appeared in a different location in each photo array, and that the fillers were very similar in appearance to defendant.

12

*Id.* at 1532-33 (internal quotation marks and citations omitted). The Court of Appeals likewise rejected Wilson's argument, stating in a footnote that it had "considered defendant's challenge to [the identification-procedure] determination" and found it "without merit." *Wilson*, 64 N.E.3d at 288 n.*.

Challenging the lawfulness of the photo arrays, Wilson points to several considerations, including that: (1) there was not a "significant lapse of time" between each array; (2) his appearance in each array "was identical"; (3) no other individual depicted in the arrays had his head tilted in the same way as he did; (4) he was the only individual wearing a hooded sweatshirt; and (5) one of the other individuals had a "full head of hair" and two earrings. Dkt. No. 1 at 22-24; Dkt. No. 29 at 4-6. Wilson also emphasizes the inherent suggestiveness of the repeated identification procedures. *See* Dkt. No. 29 at 6.

"The Due Process Clause prohibits the use of pretrial identification procedures that are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Dunlap v. Burge*, No. 05-CV-7054, 2006 WL 6624630, at *4 (S.D.N.Y. May 12, 2006) (internal quotation marks omitted). "In the Second Circuit, courts evaluate challenges to in-court identification testimony based upon pre-trial identification procedures using a two-step inquiry: (1) was the pretrial identification procedure unduly suggestive of the suspect's guilt and, if the answer is affirmative, (2) was the in-court identification independently reliable rather than the product of the earlier suggestive procedures." *Id.* (internal quotation marks omitted). "If, under the first prong, the court determines that the pre-trial identification procedures were not suggestive, independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury." *Id.* (internal quotation marks omitted). "The principal

13

question in determining whether a photo array is unfairly suggestive is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that the petitioner was more likely to be the culprit." *Id.* (internal quotation marks omitted). "Ultimately, however, the question of whether a pre-trial photo identification procedure was unduly suggestive turns on the reviewing court's evaluation of the totality of the surrounding circumstances." *Id.*

In the context of a habeas petition, this Court must defer to the state-court determinations on two levels. A state court's factual finding that a petitioner's photographs would not "cause him to be unfairly singled out" is entitled to deference, as is the ultimate "legal conclusion that the photographic array was not suggestive." *Jones v. Fischer*, No. 05-CV-7774, 2009 WL 884814, at *4 (S.D.N.Y. Mar. 30, 2009).

The Court has reviewed the photo arrays at issue. *See* SCR at 143-44. In light of the deference required under § 2254, Wilson is not entitled to habeas relief on this ground. The trial court could reasonably conclude that Wilson would not be unfairly singled out because all of the men depicted are "of similar age, skin tone, facial hair, and hair style." *Id.* at 72. The allegedly unique identifiers that Wilson describes are not, in themselves, enough to compel the opposite finding. *Cf. Fabers v. Lamanna*, No. 18-CV-2399, 2020 WL 1875288, at *7 (E.D.N.Y. Apr. 15, 2020) ("It is well-settled that there is no requirement that all line-up participants be identical in appearance."). As to the legal conclusions, the trial court and Appellate Division reasonably applied governing constitutional standards, including the rule that a "single suspect's photograph in successive arrays . . . does not per

se invalidate the identification procedures." *Wilson*, 120 A.D.3d at 1532-33; *see also Dunlap v. Burge*, 583 F.3d 160, 165 (2d Cir. 2009) (discussing Supreme Court precedent on the issue).

Accordingly, Wilson is not entitled to habeas relief based on the photo arrays. In addition, to the extent Wilson raises an independent challenge to the lineup procedure, *see* Dkt. No. 1 at 24, his argument is procedurally defaulted as he did not raise any such argument on direct appeal. In his brief to the Court of Appeals, Wilson asserted only that the lineup procedure was defective insofar as it had been tainted by the suggestive photo arrays. *See* SCR at 274, 311-14.

## CONCLUSION

For the reasons stated above, the Court recommends that the Petition for Habeas Corpus (Docket No. 1) be **DISMISSED**.

A copy of this Report and Recommendation was sent by Chambers to Wilson at his current facility.

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation, in accordance with 28 USC § 636(b)(1), Fed. R. Civ. P. 72(b)(2) and WDNY Local Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH**

TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.  *Thomas v. Arn*, 474 U.S. 140 (1985); *F.D.I.C. v. Hillcrest Associates*, 66 F.3d 566 (2d. Cir. 1995); *Wesolak v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  *See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

SO ORDERED.

*/s/ Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: September 17, 2020